IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

DEANNA BOUCHER, )
)
        Plaintiff, )
)
vs. ) Case No. 12-3473-CV-S-ODS
)
CAROLYN W. COLVIN, )
Acting Commissioner of Social Security, )
)
        Defendant. )

**ORDER AND OPINION AFFIRMING
COMMISSIONER'S FINAL DECISION DENYING BENEFITS**

    Pending is Plaintiff's appeal of the Commissioner of Social Security's final decision denying her application for disability and supplemental security income benefits. The Commissioner's decision is affirmed.

## I. BACKGROUND

    Plaintiff was born in October 1961, earned a bachelor's degree, and has prior work experience as a laborer and factory worker. She alleges she became disabled on March 5, 2008, due to a combination of depression, anxiety, panic attacks, and back pain. The issues raised by Plaintiff focus on her mental/emotional difficulties, so this Order will as well.

    Plaintiff last engaged in substantial gainful activity on March 5, 2008, R. at 11, which is her alleged onset date. There is a paucity of medical evidence regarding her mental/emotional problems. In February 2007, Dr. James Bright reported Plaintiff was doing well on Paxil. He made a similar note in August 2007. His next note is from March 6, 2008, at which time Plaintiff reported that she was angry, unable to sleep, and could not get along with people. Dr. Bright increased her dosage of Paxil and added a prescription for Seroquel. R. at 241. In January 2009, Plaintiff reported she was unable

to afford Seroquel and had stopped taking Paxil a month prior and now felt "down + sad." Dr. Bright prescribed 20 mg of Paxil – a smaller dosage than what he prescribed in March 2008. R. at 242. There are no further notes from Dr. Bright.

In August 2009 Plaintiff sought treatment from the Kitchen Clinic. She reported that she lost her job five years prior and was feeling a lot of pressure to get another one. She reported depression and anxiety which she attributed to difficulties associated with living with her brother, who suffered from alcoholism and had "multiple problems." The initial impression was depression and anxiety; she was prescribed Zoloft and a meeting with a counselor was scheduled. R. at 247. Plaintiff met with the counselor, Michaela Muehlbach, on September 3. She reported that she had been treated for depression and anxiety for the past ten years, and that those conditions worsened when she was diagnosed with hyperthyroidism.[1] The thyroid treatment caused her pain and fatigue, which led to her decision to quit her job. R. at 311. The counselor noted Plaintiff was oriented to person, place, time and situation, could concentrate adequately, had an intact memory, and normal thought processes and speech. The counselor diagnosed Plaintiff as suffering from major depressive disorder, recurrent and severe without psychotic features, and generalized anxiety disorder. She determined Plaintiff's GAF score was 38 and recommended Plaintiff "[p]ractice positive thoughts and thought-stopping," take daily walks and return in approximately two weeks." R. at 312. Plaintiff did not return for that appointment. R. at 314. On October 16 she related that Dr. Bright had treated her for ten years by prescribing medication; the medication helped but never relieved the depression. There is no mention of the Zoloft she had been prescribed at the Kitchen Clinic, although that prescription was increased. R. at 315. In November, Plaintiff reported that she had not experienced any changes in her symptoms; the Zoloft was prescribed again and Wellbutrin was added. R. at 316. However, the following month Plaintiff reported that she had stopped taking Wellbutrin because it increased her anxiety and left a bad taste in her mouth. R. at 317. In April 2010 Plaintiff reported "Zoloft working quite well" and the prescription was refilled. R. at 318. This constitutes the last relevant record from the Kitchen Clinic.

---

[1]The ALJ found Plaintiff's thyroid problems were not severe because they were controlled with medication. This aspect of the ALJ's decision is not challenged.

2

In June 2010 Plaintiff began receiving treatment from Dr. Steve Langguth. With respect to her anxiety she requested "referral to mental health professional [and] medication to sustain until appt." Dr. Langguth stated the "[l]evel of severity is mild" and prescribed the same dosage of Zoloft as had the Kitchen Clinic. R. at 298-300. The Zoloft prescription was refilled in subsequent visits, and there are no further discussions of Plaintiff's mental difficulties in Dr. Langguth's records.

Meanwhile, in October 2009 – before the Kitchen Clinic prescribed the effective dosage of Zoloft – Plaintiff underwent a consultative examination performed by a psychologist, Dr. David Lutz. Plaintiff told Dr. Lutz she felt irritable, jumpy, withdrawn, and weepy. Her anxiety caused nausea and made her heart pound. Plaintiff explained "that she was off her medication for about two to three months" earlier in the year – apparently, a reference to the time between her receiving treatment from Dr. Bright and the Kitchen Clinic – and during that time her anxiety intensified. She traced the onset of her anxiety and depression to an auto accident that occurred approximately sixteen years prior. R. at 263. She had been able to work for more than eighteen years; she quit her last job of significance (which she had held for nineteen months) after she was sent home without pay for cursing at a co-worker. The job before that she held for seventeen years. Plaintiff denied any sleeping difficulty and spends her day watching television. R. at 265. During the examination, Plaintiff "was responsive and cooperative, but appeared discouraged and distraught. She cried throughout much of the last half of the interview." She was oriented to time, person and place, performed adequately on mental acuity tests, and appeared to have a memory consistent with her intellectual level, which Dr. Lutz assessed "to be in the average to possibly low average ranges." R. at 266.

Dr. Lutz concluded Plaintiff suffered from panic disorder with agoraphobia, panic attacks, anxiety and major depression that was moderate to severe and possibly recurrent. He assessed her GAF score at 50 and concluded that Plaintiff

> seemed able to understand and remember simple and complex instructions. She seemed able to sustain concentration and persistence on simple and complex instructions. She seemed able to interact in at least moderately demanding social situations. She seemed able to adapt to her environment. Given that she has received treatment, I had some

3

>concern as to whether she could sustain performance consistently.
>However, she has been able to work for several years even with her
>anxiety and depressive symptoms.

R. at 267.

During the hearing Plaintiff testified that anxiety and depression makes her dizzy, light headed, and nauseous. She is unable to (or has difficulty trying to) focus, breathe, be around people, or leave the neighborhood. R. at 30-32. Unfamiliar situations make her tense. R. at 34-35. She experiences daily crying spells, persistent feelings of worthlessness, and panic attacks when in strange places or when near strange people. These feelings sometimes get so strong that she cannot finish shopping. She spends her day sitting on the couch and staring out the window. R. at 44-50.

With respect to these matters, the ALJ's findings regarding Plaintiff's residual functional capacity ("RFC") indicate Plaintiff can work in an environment that requires no contact with the public and only occasional contact with supervisors and co-workers. He also found Plaintiff was not limited in her ability to understand or remember short and simple instructions, but was limited (between mildly and markedly) in her ability to carry out such instructions. R. at 13. In making this finding the ALJ noted Plaintiff was not experiencing memory problems, mood swings, or problems with insight, judgment, attention span or concentration. He noted Plaintiff's failure to see a mental health professional, either at the Kitchen Clinic (beyond the first meeting) or after seeing Dr. Langguth. Plaintiff's difficulties began ten to fifteen years in the past and Plaintiff was able to work until her alleged onset date, but the Record does not reflect her condition worsened or any other reason why Plaintiff became disabled on March 5, 2008 but was able to work before then. The ALJ also noted Plaintiff worked as a Census taker in 2010. While this did not rise to the level of substantial gainful activity, this job required the very conduct Plaintiff contended she was unable to perform: leaving her house, meeting with and talking to people, and encountering strange and new situations. R. at 15. With respect to the treating professionals, the ALJ gave "great weight" to Dr. Lutz's assessment because it was "widely consistent with the overall evidence of record, his opinion is supported by his examination notes and a narrative explaining his conclusions, and his opinion [was] persuasive." The ALJ declined Plaintiff's request to

4

seek clarification of a single allegedly inconsistent statement in Dr. Lutz's report (which is discussed below), finding it unnecessary "because Dr. Lutz's narrative report adequately addresses and provides more than sufficient content for his functional conclusions." R. at 16. With respect to the two GAF scores, the ALJ found they provided "little assistance in arriving at specific functional limitations or capabilities" because they were based on "unexpressed impressions created by claimant's subjective complaints rather than from objective testing or reviewable measurements." R. at 16. Based on the RFC (which included physical limitations not at issue here) and the testimony from a vocational expert, the ALJ found Plaintiff could return to her past work as machine cutter II. R. at 17.

## II. DISCUSSION

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion. [The Court] will not reverse a decision simply because some evidence may support the opposite conclusion." Mitchell v. Shalala, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Though advantageous to the Commissioner, this standard also requires that the Court consider evidence that fairly detracts from the final decision. Forsythe v. Sullivan, 926 F.2d 774, 775 (8th Cir. 1991) (citing Hutsell v. Sullivan, 892 F.2d 747, 749 (8th Cir. 1989)). Substantial evidence means "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Gragg v. Astrue, 615 F.3d 932, 938 (8th Cir. 2010).

Plaintiff's primary argument rests on the GAF scores assigned by Ms. Muehlbach and Dr. Lutz. She contends – at least implicitly and sometimes explicitly – that a certain GAF score compels a finding of disability. This is incorrect: a GAF score is a fact that is to be considered with all others. The question remains: was there substantial evidence in the Record as a whole to support the ALJ's findings? Halverson v. Astrue, 600 F.3d 922, 931 (8th Cir. 2010). The Court concludes there is such support.

5

A score of 38 would suggest severe mental difficulties, and there is nothing in Ms. Muehlbach's report to support such an assessment. A score of 50 is at the top of a range suggesting serious impairments, but Dr. Lutz's report does not suggest how he derived the score. This is one of the reasons why GAF scores are not regarded as binding objective tests: their basis need not be identified with clarity, but for disability determination purposes the rationale is important. Here, the rationale is either missing (in the case of Ms. Muehlbach) or not supportive of a claim of disability (in the case of Dr. Lutz).

Plaintiff also argues the ALJ erred in failing to seek clarification from Dr. Lutz. Within his concluding paragraph (which is set out in full on pages three and four of this Order), Dr. Lutz included the following sentence: "Given that she has received treatment, I had some concern as to whether she could sustain performance consistently." Plaintiff focuses on this sentence in isolation to argue that Dr. Lutz expressed unresolved concerns about her ability to work. However, considering that sentence in context with the entire paragraph (and after considering that paragraph in light of the entire report) makes it clear that Dr. Lutz is explaining that while he initially had concerns about her ability to sustain performance sufficiently to work, his analysis and her work history demonstrated that she would be able to work. The ALJ was not required to seek clarification from Dr. Lutz.

Finally, Plaintiff attacks the VE's testimony, but these attacks depend on Plaintiff first establishing the RFC is incorrect. She has not established the RFC is incorrect, so this argument fails.

## III. CONCLUSION

For these reasons, the Commissioner's final decision is affirmed.

IT IS SO ORDERED.

/s/ Ortrie D. Smith<br>ORTRIE D. SMITH, SENIOR JUDGE<br>UNITED STATES DISTRICT COURT

DATE: August 8, 2013